WYATT *vs*. GREER, et al.

1. The vendee of a slave, sold on a warranty of good character, will be relieved in a Court of Chancery, where the vendor has left the State, and resides without its judicial jurisdiction-- it appearing that the purchase money is the only fund within the State; and that there has been a false warranty.
2. But, where a bill, in such case, contained no prayer for general or special relief, but only for injunction against the purchase fund; the Court refused a decree here, and remanded the case at complainant's costs.

Peter Wyatt filed a bill in Chancery, in the Circuit Court of Autauga, setting forth, that on or about the fifteenth day of July, 1822, he purchased from Moses Greer, a negro man slave, named David : that, in payment for this negro, the complainant transferred to said Greer, a note executed by his brother, William Wyatt, for the sum of five hundred and fifty-one dollars and two cents, dated the fifteenth day of July, 1820, and payable at one day ; and also a horse, saddle and bridle, estimated at one hundred dollars. That previous to, and at the time of the said sale of the aforesaid negro slave, the said Greer, represented the slave to be possessed of good character— whereas the slave was known to said Greer, to be of bad character : and in pursuance of that representation, executed to the complainant a bill of sale, warranting the slave in that respect. That the bill of sale had been lost, so that it could not be produced— having been stolen, as the complainant believed, with a sum of money. That the slave had been but a few days in the possession of the complainant, before he ran away, and, having committed a theft, was

WYATT *vs* GREER et al.

shot at and wounded; and after apprehension, subsequently absconded a second and third time; and had been taken up, tried and executed for felony.—That, during this period, the complainant had not more than one week's service from him: that his death was attributable, alone to his bad character—which was all known, as alleged, to Greer, the slave having been removed from the State of Georgia, in consequence of his infamous reputation. That, of all these circumstances the complainant was ignorant, at the time he purchased the said slave. That suit had been commenced on the note, which had been transferred in payment of the slave, in the name of one Campbell, as bearer, and judgment rendered thereon, though the amount still remained uncollected: and, the bill charged, that the said Campbell had not, nor ever had, any interest in the note or judgment, but that the interest therein, was, and at all times had been vested in Greer—being sued, as charged, in his name, to subserve the improper views of Greer, or to prevent his being called on, to give security for costs.

It further alleged, that Greer was a resident citizen of the State of Georgia, but of what part, the complainant was ignorant. That the complainant had been put to great expense in defending said slave, on the charge of felony, and also to other additional loss. The bill, therefore prayed, that Campbell be enjoined from further proceedings on the judgment; and Wyatt, the debtor, from paying over the amount of the same, until further adjudication could be had in Chancery: and prayed subpœna.

The answer of Greer insisted on a want of pro-

per jurisdiction in Chancery, of the subject matter of the bill—specified his residence in the State of Georgia, and averred his solvency, and contended that, if entitled to relief, Wyatt should should sue in that State. It admitted the sale of the slave, as charged, and the particulars of the payment; but denied positively any warranty of the slaves's character—denied any representations in reference thereto, or knowledge of his reputation : admitted having executed a bill of sale, but denied that any warranty of character was therein contained. Charged the complainant with cruelty to his slaves, generally, and alleged this as a reason why the slave absconded.— Denied that the slave had been taken out of the State of Georgia, on account of his bad character. Admitted that Campbell had no interest in the note; but denied that the suit was brought in nis name, for any improper object. Asserted that the note had been transferred to one James Greer, for valuable consideration; and denied all manner of fraud, &c.

The answer of Campbell admitted having sued on the note as bearer, but denied any interest therein ; and confessed that the note had been thus sued in his name, to prevent the defendant, Wyatt, from requiring security for costs—Greer being a non-resident.

Evidence in the cause.

*Peyton Bibb* proved, that he witnessed the sale of the slave in question; that Greer represented the slave to be twenty-two years of age ; but witness objected that the slave was nearly forty; and Wyatt,

the vendee, being at that time a minor, the witness told Greer he was about to cheat Wyatt; and that he would not suffer it. That witness undertook to persuade Wyatt not to purchase the slave; but that complainant said he felt himself in honor bound to do so, from a former conversation with Greer. That witness then insisted on drawing the bill of sale, and having done so, bound the said Greer, as to every particular, so as to render him responsible for every defect—which bill of sale the defendant, Greer, executed: that shortly afterwards, the negro proved of bad character; absconded, and according to common report, was subsequently executed for felony.— Also, that it was generally understood, that the complainant's house had been broken open, and his money and papers stolen.

*Josiah Rice* proved that on the day the complainant purchased the slave, he proposed buying the slave, if Greer would warrant him to be sound and well, and of good character; but that Greer refused, as witness understood, to warrant, as witness required, saying he could get a better trade from complainant. That the slave was afterwards reputed, (in common rumor,) of bad character, and hanged.

*Horatio G. Perry*, established the fact of his employment as an attorney at law, to defend the said slave, on a charge of robbery: and that the slave was condemed and executed.

*John D. Bibb*, proved that the bill of sale did contain a warranty as to the character of the slave; and that he was of bad character.

*Malcomb M'Ray*, a witness for the defendant, swore

4 s & p.                           41

that he had seen the bill of sale given to complainant. He did not remember its terms; but was under the impression it was written after the common form, containing a receipt for the money, and a warranty of the title.

The Chancellor below, on hearing, dismissed the bill without prejudice to any right of the complainant, at law : and dissolved the injunction.

LIPSCOMB, C. J.—This is an appeal from the decree of the Court of Chancery, sitting for Autauga County.

The bill, in substance, states that in July, 1822, Peter Wyatt purchased of Moses·Greer, a negro man slave. That Greer represented the negro to be of good character; that he gave a bill of sale, warranting such, as the complainant believes. That the bill of sale is lost or mislaid, and believes it to have been taken from his house with a sum of money, stolen from him. That the slave proved to be of a bad character, repeatedly running away, and committing felonies; and that he was at length tried, and condemned and executed, for a felony committed by him, in the County of Dallas. That the complainant never received any service from the said slave; that he ran away in about a week after the purchase was made. That the complainant had expended considerable sums of money in the defence of the slave, when charged with felony. The bill charges, that the said Moses Greer knew at the time of the sale, that the slave was of a bad character. That Greer does not reside in this State, but some where

WYATT *vs.* GREER et al.

in the State of Georgia. That he, (the complainant,) knows of no property or funds, from which he could reimburse himself for his loss. That the complainant gave in payment for the said negro slave, a promissory note, on his, (the complainant's) brother, William Wyatt, dated 15th July, 1820, and payable one day after date, for five hundred and fifty-one dollars, and a horse, saddle and bridle, worth one hundred dollars. That the note on William Wyatt has been put in suit in the name of one Moses Campbell; and judgment recovered thereon. That the money has not been paid by William Wyatt; but that it soon will be, if the interposition of the Court of Chancery should not prevent it. That Campbell has no interest in the judgment, his name only being used, to promote the views of Greer, or to avoid the necessity of giving security for costs of suit.

The bill prays that Campbell and Greer should be enjoined from further proceedings on the judgment at law, until a final decree is made; and that William Wyatt should be enjoined from paying over the amount of the judgment.

The answer of Greer denies that the warranty is for more than the title and soundness of the slave—denies any knowledge of his bad character—says that Campbell has no interest in the judgment against William Wyatt—that the interest in that judgment was in his brother, James Greer, alone—that he had transferred it to his brother very shortly after the sale of the negro—denies his inability to pay any damages that might be recovered against him, in a Court of law, for any breach of warranty, in the sale of said slave.

The answer of Cambell admits that he has no interest in the judgment, and that he never had any. That the suit was brought in his name, merely as a friendly act to Greer, who is his relative, and to avoid giving security for costs.

Wyatt, in his answer, says that he has not paid the amount; but that he is ready to do so, when and wheresoever he may be directed by the Court.

The testimony, though it is not altogether conclusive, preponderates in favor of the truth of the allethe gation in the bill, of a warranty of the character of slave; and it fully establishes his very bad character, a short time after the sale; although there is no testimony, as to what it was at the time of the sale.

When there is any uncertainty or conflict in the testimony of a fact, it is believed to be proper that it should be tried by a jury, on an issue made up and sent to the Court of law. It would be more peculiarly the province of a jury, in a Court of law, to determine, whether there had been a breach of warranty, and as to the damages for such breach.

The non-residence of the defendant, Greer, and his having nothing but this fund, in the hands of William Wyatt, when coupled with the fact that the contract was made here, and its breach, if any, was within the jurisdiction, is a sufficient ground for Chancery taking cognizance of the matter. Should it be denied, the complainant would be driven to seek redress in a foreign tribunal.

It is very clear, that the facts disclosed, sufficiently shew, that the complainant has no adequate remedy at law, in this State; and that he would be com-

pelled to seek it wherever the person of the defendant could be found.

The objection, that James Greer ought to have been made a party, is not available. We have no evidence, that he has an interest in the judgment at law, but the disclosure, to that effect, in Moses Greer's answer. If, however, it be true, that he is the owner of the judgment at law, against William Wyatt, his interest is not likely to suffer, from his ignorance of his rights; as Campbell, who seems to have been an agent in the management of the suit at law, has had notice, and been made a party. This would affect James Greer, with notice of the pendency of the suit; and if he is not satisfied that his interest will be sufficiently protected, he ought to have applied for permission to be made a party.

But, independently of the objections before suggested, to the Chancellor deciding on the fact of the warranty, and the amount of damages for its breach, if a breach is proven, we find the bill so very imperfect, that no decree of relief can be made. The Chancellor below, ought to have ordered it to have been amended before it could be heard on its merits. It does not pray either general or specific relief. It only prays the injunction, until a final decree is made.

As these defects are fairly chargeable to the complainant, we shall, in reversing the decree of dismissal entered by the Chancellor below, and remanding the cause, tax the complainant with the payment of all the costs of this Court.